UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRYAN LEE JORDAN, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, <br><br> Respondent. | CAUSE NO. 2:23-CV-112-APR |

OPINION AND ORDER

Bryan L. Jordan, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for dealing in methamphetamine, possession of marijuana, possession of paraphernalia, automobile theft, and resisting law enforcement under Case No. 79D02-1608-F2-21. Following a jury trial, on May 15, 2017, the Tippecanoe Superior Court sentenced him as a habitual offender to twenty-six years of incarceration.

FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial as follows:

> On July 30, 2016, officers were dispatched to the home of Jamie Rowland on a complaint that her ex-boyfriend was attempting to enter her residence. Tippecanoe County Sheriff's Deputy Dustin Oliver arrived at the home and observed a man in the driveway, later identified as Jordan, astride a motorcycle parked next to a car. As Deputy Oliver walked toward the residence, Jordan "got off of the motorcycle and took a backpack off of his back and placed it in the vehicle that was sitting next to the motorcycle." Tippecanoe County Sheriff's Lieutenant John Ricks arrived around the same time, but approached from a different angle. He, too, saw

> Jordan "open the driver's side door and set the backpack in the driver's seat of that passenger car."
>
> When the officers checked the plates of the motorcycle, the "plate returned on a blue Yamaha." Lieutenant Ricks provided the vehicle identification number "to dispatch so that they could run it." Dispatch replied the motorcycle had been reported stolen. At that point, Deputy Oliver attempted to place Jordan under arrest, but Jordan resisted. Eventually, Deputy Oliver was able to effectuate the arrest. However, during the struggle, several items fell out of Jordan's pockets, including the keys to the motorcycle. Lieutenant Ricks asked Rowland if the backpack belonged to her but she said it did not. Lieutenant Ricks emptied the backpack and found methamphetamine, marijuana, a glass pipe, a torch, two digital scales, a baggy, a switch blade knife, and various toiletries.
>
> The State charged Jordan with Level 2 felony dealing in methamphetamine, Level 4 felony possession of methamphetamine, Class B misdemeanor possession of marijuana, Class C misdemeanor possession of paraphernalia, Level 6 felony auto theft/receiving stolen auto parts, Class A misdemeanor resisting law enforcement, and a habitual offender enhancement.
>
> * * *
>
> The jury found Jordan guilty on all counts. Based on double jeopardy concerns, the trial court vacated the Level 4 felony possession of methamphetamine charge and sentenced Jordan to twenty years for the Level 2 felony dealing in methamphetamine, which it enhanced by six years for Jordan's being an habitual offender. The court ordered Jordan to serve 180 days for Class B misdemeanor possession of marijuana, sixty days for Class C misdemeanor possession of paraphernalia, two years for Level 6 felony auto theft, and one year for Class A misdemeanor resisting law enforcement, and the court ordered all of those sentences to be served concurrent with each other and with the Level 2 felony sentence. Thus, Jordan's aggregate sentence is twenty-six years.

*Jordan v. State*, 95 N.E.3d 212 (Ind. Ct. App. 2017).

In the petition, Jordan argues that he is entitled to habeas relief because the record lacks sufficient evidence to support his conviction for dealing methamphetamine, because the trial court erred in denying his motion for a continuance and deprived him of his Sixth Amendment right to his choice of counsel, and because trial counsel provided ineffective assistance by failing to file a motion to suppress evidence obtained from searching his backpack.

PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. **28 U.S.C. § 2254(b)(1)(A)**; *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment requires "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). Moreover, if the State court declines to address the petitioner's claims based on a lack of compliance with a procedural requirement, including State court rules, the independent and adequate state ground doctrine bars federal review of those claims. *Coleman v. Thompson*, 501 U.S. 722, 751 (1991).

Jordan presented the claims regarding insufficient evidence and ineffective assistance of counsel to the Indiana Court of Appeals and in his petitions to transfer to the Indiana Supreme Court. [DE 6-5; 6-8; 6-12; 6-16]. However, while Jordan presented his claim relating to the denial of his motion for a continuance to the Indiana Court of Appeals, he did not include it in his petition to transfer to the Indiana Supreme Court. [De 6-5; 6-8]. Therefore, the claim of trial court error is procedurally defaulted.

Jordan argues that the court should excuse procedural default, attributing the failure to raise the claim to appellate counsel. He represents that he never received a copy of his petition to transfer to the Indiana Supreme Court from appellate counsel and that, as a result, he was unaware that the petition omitted the claim. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537

F.3d 804, 812 (7th Cir. 2008). Sufficient cause to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

"Attorney error that constitutes ineffective assistance of counsel is cause." *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991). However, "it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, i.e., imputed to the State." *Id.* at 754. "In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation." *Id.* ""[T]he right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). "[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals." *Wainwright v. Torna*, 455 U.S. 586, 587 (1982). Under Indiana law, a litigant who files a petition to transfer to the Indiana Supreme Court pursues a discretionary appeal. *See* Ind. R. App. 57(H) ("The grant of transfer is a matter of judicial discretion.").

Jordan had no constitutional right to appointed counsel when he pursued a discretionary appeal by filing the petition to transfer to the Indiana Supreme Court. As a result, he cannot assert ineffective assistance of counsel as cause to excuse the procedural default that occurred at that stage of the appellate proceedings. Therefore, the claim of trial court error is not a basis for habeas relief.

## STANDARD OF REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotations and citation omitted).

4

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**28 U.S.C. § 2254(d)**.

>[This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted).

Criminal defendants are entitled to a fair trial but not a perfect one. ***Rose v. Clark***, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. ***Wiggins v. Smith***, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." ***Harrington v. Richter***, 562 U.S. 86, 101 (2011) (quotation marks omitted).

## DISCUSSION

### A. Sufficiency of the Evidence

Jordan argues that insufficient evidence exists to support his conviction for felony possession of at least ten grams of methamphetamine with intent to deliver. According to Jordan, his conviction required the jury to find that he intended to distribute at least ten grams of

5

methamphetamine and that the trial evidence was insufficient to support such a finding. For sufficiency of the evidence claims, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

At trial, Jordan faced the following charge:

> On or about July 30, 2016, in Tippecanoe County, State of Indiana, Bryan Lee Jordan did possess, with the intent to deliver, methamphetamine, pure or adulterated, and the amount of the drug involved was at least 10 grams.

[DE 7-3 at 64].

Deputy Dustin Oliver testified that he was dispatched to 403 Woods Edge Court at around 7:20 p.m. on July 30, 2016, for a residential entry. [DE 7-5 at 26-34]. Dispatch informed Deputy Oliver that a woman was in the residence and that her ex-boyfriend, Jordan, was attempting to enter the residence. *Id.* Upon arrival, he noticed Jordan sitting on a yellow motorcycle as he walked towards the residence. *Id.* Jordan was "straddling the motorcycle as if he was getting ready to leave." *Id.* Once Jordan noticed Deputy Oliver's arrival, he got off the motorcycle, took off his backpack, placed it in an adjacent vehicle, and began to speak to Deputy Oliver. *Id.* Deputy Oliver noted that Jordan seemed nervous, as if he wanted to leave. *Id.* Jordan informed Deputy Oliver that he was waiting for Jamie Rowland to come back home. *Id.* Jordan further told Deputy Oliver that the motorcycle in the driveway belonged to his friend. *Id.* After

6

discovering that the motorcycle had been reported as stolen, Deputy Oliver attempted to arrest Jordan. *Id.*

During the arrest, Jordan pulled away from Deputy Oliver. *Id.* at 32. In response, Deputy Oliver took Jordan to the ground and told him to stop resisting. *Id.* During the struggle, a knife and a lanyard with keys fell out of Jordan's pocket. *Id.* Deputy Oliver was eventually able to place Jordan in his police vehicle and transport him to jail. *Id.* During the booking process, Deputy Oliver determined that Jordan was self-employed and found more than $1,600 in cash on his person. *Id.* He determined that one of the keys that fell from Jordan's pocket fit the stolen motorcycle. *Id.*

Jamie Rowland testified that, in July 2016, she and Jordan were in an "on again and off again" stage of their romantic relationship, which they had resumed as of the date of the trial. *Id.* at 38-44. At the time of this incident, she was in the house while Jordan was in the driveway. *Id.* Rowland first saw the backpack in the front seat of her car when officers directed her attention to it. *Id.* Rowland saw its contents after the police had emptied the backpack but did not know to whom the contents belonged. On cross-examination, Rowland testified that she and Jordan were "split up for a while" before July 2016. *Id.* at 44-48. Many of the backpack's contents were not hygiene products that Jordan would normally use. *Id.* It contained shoes and clothing that Rowland had not seen Jordan wear. *Id.* Rowland eventually threw away the backpack. *Id.*

Rowland's daughter, Lyric Robinson, also testified during the trial. *Id.* at 53-58. On July 30, 2016, Robinson saw the motorcycle as the police were speaking to Rowland. *Id.* One day earlier, Robinson saw a man on the same motorcycle at a stop light, and the man waved at her. *Id.* Robinson recognized the man as Jordan but could not be "a thousand percent" certain. *Id.* On cross-examination, she testified that the man on the motorcycle wore a grey helmet that covered

his eyes. *Id.* at 56-57. On redirect, Robinson testified that she had known Jordan for two years prior to July 2016. *Id.* at 57-58. Robinson identified the helmet in the photograph taken at the scene as the helmet she saw the man wearing on July 29, 2016. *Id.*

Lieutenant Ricks testified that he arrived on-scene shortly after Deputy Oliver with the understanding that "there was a female in the residence and that the ex-boyfriend had come to the residence and was trying to gain entry into the mobile home." *Id.* at 59-75. Jordan stood next to a motorcycle with a backpack in his hand speaking with Deputy Oliver and then placed the backpack in the passenger seat of vehicle parked next to the motorcycle. *Id.* Jordan seemed flighty and nervous about the backpack. *Id.* Jordan told Lieutenant Ricks that his friend drove him there on the motorcycle and walked to another residence. *Id.* After running the motorcycle VIN, dispatch informed him that the motorcycle had been reported as stolen. *Id.* Lieutenant Ricks took photographs of the motorcycle, which were admitted into evidence and depicted a grey helmet with a visor. *Id.*; [DE 7-1 at 15-22].

Lieutenant Ricks testified that he seized the backpack after speaking with Rowland. [DE 7-5 at 68-75]. In the backpack, he found toiletries, shirts, a pair of tennis shoes, methamphetamine, marijuana, a glass pipe, a torch, two digital scales, a stamp baggy,[1] and a switch blade knife. *Id.* Lieutenant Ricks took photographs of the backpack and its contents, which were admitted into evidence. *Id.*; [DE 7-1 at 5-14].

---

[1] In response to a juror question, Lieutenant Ricks testified as follows:

> A stamp baggy is a small baggy that's like a sealable, small plastic baggy just like you would a sandwich baggy has the seal at the top where you can put a small amount of any kind of drug, marijuana or methamphetamine and that you would – it would be a user amount that you would put in the small baggy that you could then sell that small baggy.

[DE 12-5 at 85].

Deputy Donald Miller testified that he had served as a member of the Tippecanoe County Drug Task Force and had extensive experience with the sale of controlled substances within Tippecanoe County. [DE 7-5 at 85-94]. Based on his training and expertise, Deputy Miller testified that methamphetamine was typically purchased in Lafayette County in 2016 for $60.00 to a $100.00 per gram. *Id.* The dosage varies depending on an individual's history of drug use and tolerance, but users typically ingest between a quarter to a full gram of methamphetamine. *Id.* According to Deputy Miller, methamphetamine is typically sold in small stamp baggies, which usually contain around a half gram of the substance. *Id.* Deputy Miller testified that a person found with a greater quantity or variation of illegal substances, substantial amounts of currency, digital scales, plastic bags, or ledgers is more likely to be a dealer than an individual user. *Id.*

Philip Patrie testified that he had reported the motorcycle as stolen on June 12, 2016. *Id.* at 104-07. On July 30, 2016, he went retrieve his motorcycle from the police, but the motorcycle had been altered so that the original keys did not work in the ignition. *Id.* Patrie then went to the jail where a deputy gave him a key that did work in the ignition. *Id.* Detective Jason Savage testified that he met with Patrie when he reported the motorcycle as stolen. *Id.* at 108-11.

Detective David Morgan established chain of custody of the substances contained in the backpack by testifying that he transported them in sealed bags to the Indiana State Police Laboratory. *Id.* at 113-18. Sara Wildeman testified that she worked at the Indiana State Police Laboratory and that her test results identified the substances as 12.85 grams of marijuana and 13.5 grams of methamphetamine *Id.* at 118-25.

On direct appeal, the Indiana Court of Appeals rejected the argument that the record lacked sufficient evidence to demonstrate that he intended to deal methamphetamine. [DE 6-7 at

10-13]. Jordan argued that the prosecution was required to prove that he intended to deliver at least ten grams of methamphetamine and that the contrary statutory interpretation set forth in *Bookwalter v. State*, 22 N.E.3d 735, 741-42 (Ind. Ct. App. 2014), was incorrect. [DE 6-5 at 14-19]. Jordan argued that the evidence at most demonstrated that he intended to deliver an unknown amount of evidence. *Id.* The appellate court declined to overrule *Bookwalter* and found that the prosecution was merely required to show that Jordan possessed at least ten grams of methamphetamine and that he intended to deliver it but was not required to show that Jordan intended to deliver a specific amount. [DE 6-7 at 10-13].

The appellate court relied on *Cline v. State*, 860, N.E. 2d 647 (Ind. Ct. App. 2007) to note that "a possession of a large amount of a narcotic substance is circumstantial evidence of intent to deliver;" "even a large amount of drugs, if packaged for personal use, does not establish intent to deliver;" and that "possession of paraphernalia used to ingest the controlled substance at issue is more likely indicative of personal use than intent to deliver." *Id.* The appellate court then found the trial record sufficient to support Jordan's conviction because it contained evidence that Jordan possessed scales, a large amount of cash, and an empty baggy in addition to a large amount of drugs and the glass pipe. *Id.*

After reviewing the record, the court cannot find that the State court made an unreasonable determination with respect to this claim. To start, the court defers to a State appellate court on the statutory interpretation of the methamphetamine dealing statute. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Consequently, the relevant questions are whether the trial record contained sufficient evidence to show that Jordan possessed ten grams of methamphetamine, which Jordan does not dispute, and whether he

intended to deal some portion of it. As noted by the State court, the trial record contains ample evidence from which a rational jury could have found that Jordan intended to deal methamphetamine, including the amount of methamphetamine, scales, the amount of cash, and an empty baggie. Therefore, the court cannot find that the State court made an unreasonable determination, and the sufficiency of the evidence claim is not a basis for habeas relief.

### B. Ineffective Assistance of Trial Counsel

Jordan argues that trial counsel was ineffective for failing to seek suppression of evidence obtained without a warrant. Jordan contends that trial counsel falsely informed him he had no standing to move to suppress evidence obtained from the backpack and that an effort to suppress the evidence would have compromised the trial strategy of disclaiming ownership of the backpack. Jordan believes that a motion to suppress would have resulted in the dismissal of four of his charges and the habitual offender enhancement.

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. ***Strickland v. Washington***, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A

11

reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under **Strickland**, "[t]he likelihood of a different result must be substantial, not just conceivable." **Harrington v. Richter**, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied **Strickland**." **McNary v. Lemke**, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." **U.S. Const. Amdmt. IV**. "A person may possess a privacy interest in the contents of personal luggage." **United States v. Rem**, 984 F.2d 806, 810 (7th Cir. 1993). "However, that privacy interest can be forfeited where the person abandons the luggage." *Id.* "Fourth Amendment protection does not extend to abandoned property." *Id.* "To demonstrate abandonment, the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." **United States v. Basinski**, 226 F.3d 829, 836–37 (7th Cir. 2000). "Because this is an objective test, it does not matter whether the defendant harbors a desire to later reclaim an item; we look solely to the external manifestations of his intent as judged by a reasonable person possessing the same knowledge available to the government agents." *Id.* "We look at the totality of the circumstances, but pay particular attention to explicit denials of ownership and to any physical relinquishment of the property." *Id.*

At the post-conviction stage, the Indiana Court of Appeals rejected the claim, finding that Jordan had not demonstrated prejudice as a result of trial counsel's decision to refrain from filing a motion to suppress. [DE 6-15 at 8-15]. The appellate court recounted that, as Deputy Oliver approached, Jordan removed his backpack and placed it in the seat of Rowland's vehicle, in

which he had no possessory interest. *Id.* Deputy Oliver arrested Jordan and removed him from the scene "without asking anyone to retrieve the back from Rowland's unlocked car."[2] *Id.* Lieutenant Ricks brought the backpack to Rowland's attention, and she denied ownership. *Id.* Lieutenant Ricks believed that Jordan had abandoned the backpack and searched it. *Id.*

The appellate court rejected the argument that Jordan tried to secure the backpack by placing it where he could retrieve it. *Id.* It noted the absence of any evidence suggesting that Jordan had keys to the vehicle or that Rowland had permitted him to use her car. *Id.* It further noted that the record indicated that Jordan and Rowland were not dating and that "Rowland called the police when Jordan arrived wanting socks and underwear from her home."[3] *Id.* The appellate court determined that Jordan did not have a reasonable expectation of privacy in the vehicle or standing to challenge the search of the vehicle. *Id.* It further determined that, because Jordan abandoned the backpack, he also did not have a reasonable expectation of privacy in the backpack. *Id.* The appellate court then concluded that because the motion to suppress would have been futile, Jordan could not demonstrate that trial counsel's performance resulted in prejudice. *Id.*

After reviewing the record, the court cannot find that the State court made an unreasonable determination with respect to this claim. On the issue of abandonment, the relevant question is whether Jordan's words or conduct would have led a reasonable officer to believe that he had relinquished his property interest in the backpack. At the time of the search, Lieutenant

---

[2] In a footnote, the appellate court noted that it inferred the absence of a request from Deputy Oliver's testimony that he first learned about the drugs in the backpack from Lieutenant Ricks who had searched the backpack. [DE 6-15 at 11].

[3] Based solely on the evidence at trial, it may have been reasonable to infer that Rowland initiated the 911 call given the absence of evidence squarely addressing this factual issue. However, at trial, the prosecution and trial counsel both represented that Rowland's brother made the 911 call. [DE 7-5 at 24, 150].

Ricks understood that he had been asked to assist a woman in an argument with a former boyfriend who was trying to break into her home. Lieutenant Ricks observed Jordan physically relinquish the backpack by nervously taking it and placing it in a vehicle that belonged to the woman as Deputy Oliver approached him. According to Lieutenant Ricks, "[When Jordan] had the backpack, it seemed that he wanted very badly to be separated from that backpack." [DE 7-5 at 63].

Thus from Lieutenant Ricks' perspective, as the police approached, Jordan nervously placed a backpack in the vehicle belonging to an individual who had ended her romantic relationship with him and who had apparently called the police for the purpose of removing him from the residential location. Though Jordan now argues that he merely intended to place the backpack in a "safe place," it is not clear how a reasonable officer in Lieutenant Ricks' position – who had been dispatched based on specific information that Jordan was particularly unwelcome at this residential location – would have reached that conclusion. Indeed, it is unclear how Jordan could have believed that Rowland's vehicle was a "safe place" to store a contraband-filled backpack under these circumstances. Furthermore, there is no evidence to suggest that Jordan affirmatively acted to convey that the backpack belonged him or that he did not abandon his backpack, even as he was escorted away from it.

The court finds that this case is analogous to **Bond v. United States**, 77 F.3d 1009 (7th Cir. 1996). In that case, police conducted surveillance of a hotel parking lot where they suspected the defendant of engaging in drug trafficking and had observed him carrying a brown leather suitcase. *Id.* at 1012. The police arrested the defendant as he visited the hotel room of a coconspirator, whom they also arrested. *Id.* The defendant and coconspirator each denied owning the suitcase on the floor, and the ensuing police search revealed that it contained $128,000. *Id.* at

1013. On collateral review, the defendant argued that trial counsel was ineffective for failing to suppress the money found in the suitcase. *Id.* The Seventh Circuit found as follows:

> We focus our inquiry on the information available to the officers at the moment they opened the brown suitcase to determine whether [the defendant] had any reasonable expectation of privacy in it at that time. Here, [the defendant] denied owning the suitcase before the search. [The defendant's] voluntary denial of ownership demonstrated "sufficient intent of disassociation to prove abandonment." By abandoning the suitcase at the time of the search, [the defendant] is precluded from challenging the legality of the search because he had no legitimate expectation of privacy in the abandoned suitcase.
>
> Even if [the defendant's] denial of ownership, by itself, did not amount to abandonment, [the defendant] left the suitcase in [the coconspirator's] room even though he was not registered in the room, had no key to the room, and thus had no expectation of privacy in the room. The fact that [the defendant] left the suitcase in [the conspirator's] room, together with his disavowal of ownership, indicate that he had abandoned the suitcase. Because [the defendant] abandoned the suitcase before the police searched it, our Fourth Amendment inquiry ends.

*Id.* at 1013–14.

As in **Bonds**, the record here indicates that Jordan had no reasonable expectation of privacy or right of access to the vehicle where he placed the backpack, and a second individual who was present at the time of the search denied ownership of the backpack. The primary difference between this case and **Bonds** is that Jordan did not verbally deny ownership of the backpack. Nevertheless, given Lieutenant Ricks' observations and the specific circumstances of the police interaction, it was not unreasonable for the State court to find that Jordan's placement of the bag in Rowland's vehicle conveyed the functional equivalent of abandonment. *See* **United States v. Harrison**, 689 F.3d 301, 307 (3d Cir. 2012) ("In most cases, disclaiming ownership or physically relinquishing the property is sufficient to establish abandonment."); **United States v. Liu**, 180 F.3d 957, 960 (8th Cir. 1999) ("But he nevertheless may have abandoned the bag by physical relinquishment, even while claiming ownership, since a verbal disclaimer of ownership is not required for a finding of abandonment."); *see also* **United States v. Basinski**, 226 F.3d 829,

15

834 (7th Cir. 2000) ("Thus, where a defendant allows a third party to exercise actual or apparent authority over the defendant's property, he is considered to have assumed the risk that the third party might permit access to others, including government agents."). Consequently, the court cannot find that the State court made an unreasonable determination in finding that Jordan had abandoned the backpack or in finding that a motion to suppress thus would have been futile. Therefore, the claim that trial counsel should have moved to suppress the backpack as evidence is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under **28 U.S.C. § 2253(c)**, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Jordan to proceed further.

For these reasons, the court **DENIES** the habeas corpus petition; **DENIES** a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and **DIRECTS** the Clerk to enter judgment in favor of the Respondent.

SO ORDERED on this 1st day of April, 2024.

s/ Andrew P. Rodovich<br>
MAGISTRATE JUDGE<br>
UNITED STATES DISTRICT COURT